## WEBER v. FARRELL.

(Supreme Court, Appellate Term. June 30, 1903.)

1. CONTRACTS—CONSTRUCTION.
    Defendant, being engaged in the construction of a work for a railway company, W. contracted to do the pile driving and timber work, and to furnish ironwork therefor at a certain price per bolt, rod, etc., the work to be subject to the approval of defendant and the engineer of the railway company; payment to be 85 per cent. on work done each previous month, and balance on final completion. Defendant accepted the following order drawn by W.: "Pay plaintiff on my account for iron delivered to me by him, to be used on my contract with you, plan # 179. Payments to be made as iron is used, as per my contract, on monthly bills furnished by plaintiff." *Held*, that the order and contract were to be construed together, and plaintiff could only recover for iron used, and not for all iron delivered.

2. SAME—BURDEN OF PROOF.
    The burden was on plaintiff to show delivery and progress of the work to a point where payment became due.

3. SAME.
    Iron used in a temporary work of scaffolding, etc., necessary to construction of the permanent work, was within the contract.

Appeal from Municipal Court, Borough of Manhattan.

Action by Edward Weber against Edward J. Farrell. From a judgment in plaintiff's favor, defendant appeals. Reversed.

Argued before FREEDMAN, P. J., and GILDERSLEEVE and MacLEAN, JJ.

J. B. Sheehan, for appellant.
O. E. Davis, for respondent.

GILDERSLEEVE, J. The defendant was engaged in the construction of the 149th Street Terminal of the Rapid Transit Subway. July 17, 1902, he made a contract with one Peter Walls to do the pile driving and timber work in connection with said terminal. The portions of the contract essential to a consideration of the ques-

tion presented on the appeal herein to this court are as follows, to wit:

"The piles to be spruce with butts from 10 to 12 inches or over, and of such lengths as may be required. The timber to be short leafed, yellow-pine, good quality; the iron rods also to be of good quality. * * * Iron rods and bolts, 8cts per lb. * * * The whole work to be complete in place for the above prices. * * * All labor and material to be furnished by me [Peter Walls] and the work to be done as above specified and in a good and substantial manner, subject to the inspection, approval and acceptance of the Rapid Transit Engineers and yourself [defendant]. * * * Payments to be made of 85% of the work done on or before the 15th of each month for the work done the previous month. The remaining 15% to be paid over to me [Walls] on final completion and acceptance of the work, as above provided."

On July 30, 1902, the following order was made by the said Peter Walls on the defendant, and accepted by the latter:

"New York, July 30th 1902.
"Mr. E. J. Farrell:—Please pay Edward Weber on my account for iron delivered to me by him to be used on my contract with you in connection with the 149th Street Terminal of the Rapid Transit Subway Construction Company, plan # 179 and # 276. Price to be $3.75 per 100 lbs. Payments to be made as iron is used, as per my contract, on monthly bills as rendered by Edward Weber.                                    Peter Walls.
"Accepted:
"E. J. Farrell."

The plaintiff brought this action to recover from the defendant for an alleged balance due from defendant for iron supplied to Walls pursuant to the agreement into which they had entered. The order of July 30, 1902, above set forth, and its acceptance, constitute the agreement between the parties to this action, and it is our first duty to construe this agreement, in order that we may see what obligations were created thereby. The agreement must be considered in connection with the contract of Walls with the defendant of July 17, 1902, which provided for the work into which the materials were to enter that are the subject of this litigation. We shall hereafter speak of the order and its acceptance as the "agreement," and of the contract, above mentioned, between Walls and defendant, as the "contract." They must be construed together. Gallagher v. Nichols, 60 N. Y. 438. It must be assumed that the plaintiff knew the terms of the contract. The work was being done under a written contract, accompanied by formal plans prepared by the Rapid Transit Subway Commission. This contract and these plans stated what kind of iron was required, and the contract between Walls and the defendant specifically stated that all materials were to be subject to the inspection and acceptance of the engineer of the Rapid Transit Construction Company. As to the character and quality of the iron, all parties were bound by the decision of the Rapid Transit Company engineer. If any material was rejected as improper by the engineer, the plaintiff could enforce no claim against the defendant for the same. When the plaintiff rested, there was no proof tending to show that the work had been completed, and that Walls was entitled to be paid for work, nor was there even any proof tending to show that the work had progressed sufficiently far to entitle Walls to payment for work done on or before the 15th of any month for

work done the previous month, as the contract provided. By reason of this failure of proof, we think the learned trial justice would have been warranted in dismissing the complaint when the plaintiff rested.

From subsequent evidence, however, introduced in defendant's case, consisting of defendant's testimony and the testimony of others, it appeared that considerable quantities of iron had been furnished by Weber, and used in the work, under the agreement and contract, prior to October 15, 1902, after which time no iron was delivered by plaintiff, and that subsequent to this time the defendant paid Walls $1,500 or $2,000. We think, therefore, upon the whole case it became the duty of the learned trial justice to decide the issues presented by the pleadings and the evidence. This, as we have seen, was done, and judgment rendered for the plaintiff. It was the theory of the plaintiff that he was entitled to recover for all iron delivered at the work for which he had not already been paid. Following this theory, substantially all of the testimony seems to have been directed towards showing the quantity of iron delivered, and no effort was made to show how much of the iron was used in the work. The construction placed upon the agreement by the learned trial justice accorded with this theory, and he held that it was immaterial whether the plaintiff's iron was actually used in the work or not, and the plaintiff was entitled to recover from defendant for any iron which he delivered to Walls, whether said iron was called for by the contract or not, and whether such iron was actually used in the work or not. In his opinion we find this reason given: "It would be unreasonable to hold that he (plaintiff) must, after parting with both title and possession, remain to see that it was not delivered or wasted, and depend for payment upon his ability to trace each item into its place in the completed work." And he added: "The question of fact, then, is as to how much iron the plaintiff proved he had delivered at this job." The learned justice then took up the testimony and the figures, and reached the conclusion we have seen. We think his construction of the agreement was not correct, and that the learned justice proceeded to ascertain the amount due plaintiff, if anything, upon an erroneous theory. The language of the order, which, together with the acceptance, we have held, constituted the agreement, is as follows: "Payments to be made as iron is used as per my contract." We think the reasonable interpretation of this language is that defendant was only liable to the plaintiff for such iron as was actually used in the work. It cannot truthfully be said that by these terms the defendant was liable to pay the plaintiff for all iron that was furnished, although not necessary for and not used in the work. Inasmuch as there was no specific quantity of iron named in the contract or agreement, how could the quantity to be paid for by defendant be determined, except by ascertaining the actual quantity used? Could the defendant be asked to pay for such quantity as the plaintiff chose to deliver in the exercise of his own discretion? Certainly not. We think that the extent of defendant's liability was for rods, bolts, washers, and spikes actually used in the permanent or temporary work. Although the said contract speaks of rods and bolts only, it is conceded by the defendant that, inasmuch as washers were

necessary to the utilization of the bolts, they must be included in the iron mentioned in the agreement. It appears from the testimony that false or temporary work, consisting of stay laths and scaffolding, was necessary to the performance of the contract, and in this temporary work the only iron used consisted of spikes. The defendant contends that materials of this character were not in the contemplation of the parties to the agreement, and that the words, "for iron delivered to be used," in the agreement, included only rods, bolts, and washers. We do not think the language of the agreement is subject to this limitation. We must assume that the temporary work was essential to the job. Therefore the iron used in the temporary work, consisting of spikes, was quite as necessary to enable Walls to carry out his contract as were the rods and bolts, although the spikes may not have been found in place in the completed job, and were not mentioned in the contract, and were not a specific item for which Walls could collect from defendant under their contract. We think, therefore, that the maximum of defendant's liability to the plaintiff, as we have already intimated, was for the rods, bolts, washers, and spikes delivered by the defendant and used upon the work. Here arises the main contention in the case, viz., must the defendant pay plaintiff for all iron delivered to Walls to be used, or only for iron actually used upon the job? It is the claim of plaintiff that it was his duty to deliver whatever iron Walls ordered, and that the duty devolved upon the defendant, as between the plaintiff and the defendant, of seeing to it that reasonable quantities only were ordered by Walls. We think the attitudes of the plaintiff and defendant to Walls were similar. There was no guaranty by defendant of Walls' good faith or ability to properly carry out the work. The plaintiff and defendant were each bound to look after his own interest, and no special obligation was imposed upon either to look after Walls' for the other's benefit. The extent of the defendant's obligation, as we construe the agreement, was to pay plaintiff for the iron delivered under the agreement, and necessarily used by Walls, after payment was due from defendant to Walls under the contract. The burden was upon plaintiff to show the delivery of the iron and the progress of the work to a point where, under the contract, payment became due to Walls. In other words, when money was due to Walls for completed work, then, under the terms of the agreement, the plaintiff was entitled to receive from defendant a payment. Under the contract Walls was entitled to receive payment each month "of 85% of the work done, on or before the 15th of each month, for the work done the previous month." We see, therefore, that the liability of defendant to pay plaintiff did not attach until Walls became entitled to payment for work done under his contract with defendant, and the amount to be paid depended upon the quantity of iron used on the job.

For the reasons above stated, it follows that the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.